GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By: LARA K. ESHKENAZI
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
T: (212) 637-2758
F: (212) 637-2730
E-mail: lara.eshkenazi@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWN S. LEHAL,<br><br>    Plaintiff,<br><br>    - against -<br><br>UNITED STATES MARSHAL SERVICE, *et al.*,<br><br>    Defendants. | No. 13 Civ. 3923 (DCF)<br><br>**STATEMENT OF UNDISPUTED MATERIAL FACTS OF DEFENDANTS ROBERT MARTIN, ERIC KING, AND JAMES MASTERSON PURSUANT TO LOCAL RULE 56.1** |

Pursuant to Civil Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, defendants the Robert Martin, Eric King, and James Masterson, by and through their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, state that there is no genuine issue to be tried with respect to the following material facts:

1. On January 13, 2011, James Masterson was a Deputy United States Marshal, and Robert Martin and Eric King were employed by the Bridgeport Police Department and assigned to the United States Marshals Service ("USMS") Task Force as deputized Special Deputy United

States Marshals.  *See* Declaration of Lara K. Eshkenazi, dated April 6, 2018, (the "Eshkenazi Decl."), at Ex. A.[1]

2. In November 2010, the U.S. District Court for the District of Connecticut issued an arrest warrant based on an indictment charging Plaintiff with federal drug- and firearm-possession offenses.  *See* Ex. B.

3. On January 13, 2011, the USMS Task Force arrested Plaintiff pursuant to an arrest warrant at the Safe Horizon Shelter on Amsterdam Avenue in New York.  *Id.*

4. Masterson, Martin, and King all arrived at the Safe Horizon Shelter early in the morning on January 13, 2011, to arrest Plaintiff.  Ex. D at 45:12-46:10; Ex. E at 31:20-33:20; Ex. F at 32:10-35:10; Ex G at 38:8-41:17.

5. Masterson entered the shelter with other law enforcement officers to find and apprehend Plaintiff, while other law enforcement officers stayed outside of the shelter to secure the perimeter. Ex. D at 46:4-47:17; Ex. E at 33:12-33:20; Ex. F at 35:2-35:10.

6. After handcuffs were placed on Plaintiff by either Masterson or other law enforcement officers who were assisting with the arrest, Masterson and other law enforcement officers escorted Plaintiff down the stairs and out of the building to the transport vehicle (the "vehicle").  Ex. D at 47:8-50:22.

7. After handcuffs were placed on Plaintiff, only one of the Individual Defendants had any physical contact with Plaintiff as he was escorted out of the building and placed in the vehicle. Ex. E at 33:12-36:12; Ex F at 38:23-39:24; Ex. G. at 41:3-49:3.

---

[1] Unless otherwise specified, all "Ex" references are to exhibits attached to the Declaration of Lara K. Eshkenazi dated April 6, 2018 ("Eshkenazi Dec."), filed herewith.

8. Plaintiff had never met any of the Individual Defendants prior to his arrest on January 11, 2013.  Ex. G at 43:18-43:25.

9. Prior to Plaintiff's arrest on January 11, 2013, the Individual Defendants had worked together on an almost daily basis.  Ex. F at 35:11-35:24.

10. After the arrest, Masterson brought Plaintiff to the Federal District Court in Bridgeport to process his arrest and to appear before a magistrate judge for the presentment.  Ex. D at 58:6-63:24; Ex. E at 40:4-40:10; Ex. F at 52:9-52:13.

11. Neither Plaintiff nor his attorney mentioned any injury or the need for medical attention at the presentment.  Ex. H.

12. After his presentment, Plaintiff was transferred to the custody of Wyatt where he received a medical screening.  Ex. I at 2-5.

13. During the intake medical screening at Wyatt, Plaintiff complained of shoulder pain and stated that he was "roughed up" during his arrest.  *Id.*

14. After undergoing an X-ray and MRI, Plaintiff was diagnosed with a Type III acromioclavicular ("AC") separation of his right shoulder.  *Id.* at 8.

15. Based on Plaintiff's medical records, including x-ray and MRI results, medical experts were unable to conclude with a reasonable degree of medical certainty when the injury occurred.  Ex. J at 117:25-121:2; Ex. K at 71:23-72:24.

16. There is no any indication in the relevant medical records of bruising or swelling on Plaintiff's right shoulder after his arrest.  Ex. I, Ex. J at 84:16-84:23; Ex. K at 74:10-74:24.

17. According to Plaintiff's expert, based on his review of the medical records, the injury could have occurred up to six months before the date of Plaintiff's arrest.  Ex. J at 117:25-121:2.

Dated:   New York, New York
         April 6, 2018

        GEOFFREY S. BERMAN
        United States Attorney for the
        Southern District of New York,
        *Attorney for Bivens Defendants*

By:   /s/ Lara K. Eshkenazi
       LARA K. ESHKENAZI
       Assistant United States Attorney
       86 Chambers Street
       New York, New York 10007
       Tel.   (212) 637-2758